## MURPHY v. THE S. C. & P. R. Co.

1. **Trespass:** HAY CUT ON LAND OF OTHERS: OWNERSHIP OF. One who cuts and stacks hay on unenclosed prairie owned by others, without authority, acquires no property in such hay, and, having neither ownership nor possession, cannot maintain an action for its destruction.

*Appeal from Woodbury District Court.*

WEDNESDAY, MARCH 23.

THE plaintiff brings this action to recover $504 for the alleged negligently setting fire to the prairie and permitting it to escape, thereby burning one hundred and sixty-eight tons of hay, of which the plaintiff alleges he was the owner. The answer, amongst other things, denies that plaintiff was the owner of any of the hay alleged to have been burned. The trial was to a jury and resulted in a verdict for plaintiff for $270. The defendant appeals.

*Joy & Wright,* for appellant.

*I. E. Sellick* and *Tredway & Cleland,* for appellee.

DAY, J.—Respecting his ownership of the hay in question, the plaintiff testified as follows: " This hay was on unenclosed prairie. The land upon which I cut this grass and stacked the hay was not mine. I had gone on to the land, cut the grass and stacked it. My claim to be the owner of the hay is based on this: I cut it and put it up—that is all the claim I have. I had no license to cut or stack hay there." The defendant asked the court to instruct the jury as follows: " If the jury finds from the testimony that the plaintiff had cut and stacked the hay, for the burning of which he seeks to recover in this action, upon land which he did not own, and if you further find that the plaintiff had no license or permission to cut the grass upon said land, and stack the hay therefrom thereon, the title to said hay so cut and stacked was not in the plaintiff, and he cannot maintain an action to recover for the destruction thereof by fire which burned over the prairie upon which the same was stacked." The court refused this instruction and instructed the jury as follows: " In the absence of some title or right of defendant in the land upon which the grass was stacked, and from which it was grown and cut, the ownership of the hay in plaintiff, as against defendant, is not disproved by showing that the said land from which the grass was grown and cut, and upon which it was stacked, was not the property of plaintiff, nor can the ownership of plaintiff be disproved as against defendant by showing that the plaintiff had no license or permit from the owner of the land to cut the grass, or stack the same upon the land where it was burned." The action of the court in giving this instruction, and in refusing the one asked, is assigned as error.

I. Where a party trespasses upon land of another, but in good faith and under a supposed proper authority, and takes therefrom property upon which, by his own labor, he bestows a value very greatly disproportioned to the value of the raw material, it has been held that he acquires title by accession to the manufactured article, and that the original owner can

recover only the value of the material taken. In *Witherbee v. Green*, 22 Michigan, 311, when timber of the value of twenty-five dollars had been, in the exercise of what was supposed to be a proper authority, converted into hoops of the value of seven hundred dollars, it was held that the title to the property in its converted form passed to the party by whose labor, in good faith, the change had been wrought. In *Royal Mining Co. v. Hixtin*, 37 Mich., 332, where cordwood was cut upon the land of another, hauled to a landing and piled, and was then seized and sold by the owner, it was held that the parties cutting the wood were not entitled to compensation, though they acted in good faith. The case was distinguished from *Witherbee v. Green*, in that the identity of the converted property was not destroyed, nor its value greatly increased.

A willful trespasser, however, acquires no property in the goods of another by any change wrought in them by his labor or skill, however great the change may be, provided it can be proved that the improved article was made from the original material. See *Salisbury v. McKoon*, 3 Comstock, 379. In this case it was held, where a quantity of corn was taken from the owner by a willful trespasser and converted by him into whisky, that the property was not changed, and that the whisky belonged to the owner of the original materials. In *Chandler v. Edson*, 9 Johnson, 362, it was held that where a party entered upon the land of another and cut down trees, of which he made shingles, he acquired no property in the timber or shingles. In *Brock v. Smith*, 14 Arkansas, 431, it was held that when one entered upon land as a trespasser, felled timber and split it up into cord-wood, the bestowal of his labor in splitting the timber into cordwood neither wrought a change in its specific character nor gave him any title by accession. To the same effect are also the following cases: *Betts v. Lee*, 5 John., 348; *Nesbit v. St. Paul Lumber Company*, 21 Minn., 491; *Brown v. Sax*, 7 Cowen, 95; *Freeman v. Underwood*, 66 Maine, 229. In

this last case the defendant purchased a quantity of blueberries from persons who picked them from plaintiff's land as trespassers, and it was held that, although he acted in good faith, he became liable in trover to the true owner.

We feel satisfied from the foregoing authorities, as well as upon principle, that by entering without license upon the land of another and cutting grass therefrom and making hay, the plaintiff acquired no property therein. Under our statute, if he had removed the hay from the land, he would have committed a crime. Code, § 3983.

II. As the plaintiff did not own the land upon which the hay was stacked, he had no constructive possession of it. Having neither title nor possession, it seems to be a necessary consequence that he cannot recover. Upon this branch of the case the authority is abundant. The case of *Tuly v. Tucker*, 6 Mo., 583, is directly in point. The facts were as follows: The plaintiff was owner of a sawmill and had men employed to cut down trees in a pinery. Plaintiff's employes cut down some one thousand and four hundred trees, cut off the tops and marked them in convenient lengths for stocks, and left them there. The land on which plaintiff's employes cut the trees was government land. Defendant Tucker hauled away some of the trees cut by plaintiff's employes, and plaintiff brought an action in trover against the defendant for the logs taken. In holding that the plaintiff had no right of action, the court say: "To maintain this action plaintiff must have a property, either absolute or special, and the possession, or the right to immediate possession, of the goods which are the subject of controversy. There is no pretense that plaintiff had the absolute—had he such a special property as will enable him to maintain an action of trover? The cases of special property, referred to by the authorities in illustration of the maxim that mere possession is sufficient *prima facie* evidence of property to maintain an action against a wrong doer, are those of a bailee, a carrier, a lessee for life, a lord who seizes an estray, a sheriff

who has levied on goods, and the finder of a jewel. In all these cases, and every other instance of special property, the possession has been peaceable and lawful possession, or a possession acquired by some show of title from the absolute owner. Did plaintiff, by cutting the timber on government land, acquire such possession? There is no case of a mere trespasser acquiring by his trespass constructive possession. It seems to be contrary to settled usage of law for courts to interfere in such cases, and aid one trespasser against another. For the peace of society the law will interfere so far as to protect actual possession, but will not raise a presumptive possession as the foundation of a special property. In this case the very evidence which establishes the possession proves that possession to be *tortious*, and plaintiff's *prima facie* evidence is rebutted by showing the absolute property in another." See, also, *Stephenson v. Little*, 10 Mich., 434; *Wincship v. Neale*, 10 Gray, 332; *Ridgely v. Bond*, 17 Md., 14; *Hurd v. Fleming*, 34 Vt., 169; *Hume v. Tufts*, 6 Blackf., 136; *Howe v. Fanow*, 44 Me., 233; *Muggudge v. Evileth*, 9 Metc., 233; *Putnam v. Wiley*, 8 Johns., 432.

If plaintiff could not recover if one had hauled the hay in question away, and appropriated it, *a fortiori*, he cannot recover for a mere negligent act resulting in its destruction. If plaintiff should recover the value of the hay in question, the defendant could not plead the recovery in bar to an action by the real owner. "The fact that a recovery by the holder of a merely colorable title is no bar to a recovery by the real owner demonstrates that none but the real owners can recover." *Hungerford v. Bedford*, 29 Wis., 345.

The only authorities to which we have been referred which announce a doctrine contrary to that above expressed are, *Wincher v. Shrewsbury*, 2 Scam., 283, and *Brown v. Throckmorton*, 11 Illinois, 529. These cases are opposed to the weight of authority, and cannot, in our opinion, be sustained upon principle. The court erred in the instruction given, and in refusing to give the one asked.

REVERSED.