CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY
*v.* BRYANT.

Opinion delivered December 15, 1913.

1.  RAILROADS—DUTY TO KEEP LOOKOUT—INJURY TO PERSON AT CROSSING.
    —Under Acts of 1911, page 275, the operatives of a railway train are required to keep a lookout for trespassers, and all others upon its track, and is liable for any negligence resulting in an injury to any such person, notwithstanding the contributory negligence of the injured party. (Page 446.)

2.  RAILROADS—DUTY TO KEEP LOOKOUT—HEADLIGHT.—A railway is liable for an injury to a person under the lookout statute (Acts 1911, p. 275) caused by reason of its negligence in failing to provide its locomotive with a proper headlight, as required by Acts 1907, page 1018. (Page 447.)

3.  LOCOMOTIVE—DEFINITION.—The word, "locomotive," as used in Acts of 1907, page 1018, providing for maintenance of headlights of certain candlepower, applies to all self-propelled engines or machines used on railroads for the ordinary purpose of transporting freight or passengers. (Page 449.)

4.  RAILROADS—DUTY TO PROVIDE HEADLIGHT.—A railroad company is required to provide the headlight required by Acts of 1907, page

1018, on a motor car operated by the railroad and used in carrying passengers. (Page 449.)

Appeal from Hot Spring Circuit Court; *W. H. Evans*, Judge; affirmed.

*Thos. S. Buzbee* and *John T. Hicks*, for appellant.

*J. C. Ross*, for appellee.

McCULLOCH, C. J.   The plaintiff, William Bryant, while crossing a railway bridge which constituted a part of the roadway of the defendant, Chicago, Rock Island & Pacific Railway Company, was struck and injured by a motor car operated by defendant for the purpose of carrying passengers between Malvern and Hot Springs, Arkansas, and he instituted this action to recover damages.

Plaintiff was walking along the railroad track, when he came to the bridge across a creek and undertook to cross it by crawling over the crossties on his hands and knees. He was struck by the car just as he got across the bridge and before he had time to get off the track. It was at night, and he claims that he neither saw nor heard the car until about the time it struck him.

He alleges that the railway company and its servants were negligent in failing to equip the car with a headlight, as required by statute, and that the motorman failed to exercise proper care to discover his presence on the track and prevent injuring him.

The defendant in its answer denied the charges of negligence, and alleged that, after discovering the plaintiff's presence on the track, the motorman did all he could to avoid inflicting the injury.

The case was tried before a jury and the trial resulted in a verdict in favor of the plaintiff for damages in the sum of $250.

The plaintiff testified in his own behalf and also introduced a number of witnesses, the testimony so adduced tending to show that the headlight on the car was not of the power and brilliancy required by the statutes of this State, and that, if the car had been properly

equipped and the motorman keeping a lookout, the plaintiff's presence on the track could have been discovered in time to stop the car or check its speed and avoid injuring plaintiff.

The testimony adduced by the defendant tended to show that the headlight was in accordance with the requirements of the statute, and that the motorman was keeping a lookout, but that on account of a curve in the track the presence of plaintiff crossing the bridge could not be discovered in time to avoid striking him, and that after his presence was discovered, the motorman exhausted every effort to prevent striking him.

The evidence was sufficient to sustain the contention of the plaintiff and support the finding of the jury.

The injury occurred on the night of November 30, 1912, and the case is, therefore, governed by the new "lookout" statute approved May 26, 1911, and which reads as follows:

"It shall be the duty of all persons running trains in this State upon any railroad, to keep a constant lookout for persons and property upon the track of any and all railroads, and if any person or property shall be killed or injured by the neglect of any employee of any railroad to keep such lookout, the company owning or operating any such railroad, shall be liable and responsible to the person injured for all damages resulting from neglect to keep such lookout. Notwithstanding the contributory negligence of the person injured, where, if such lookout had been kept, the employee or employees in charge of such train of such company, could have discovered the peril of the person injured in time to have prevented the injury, by the exercise of reasonable care after the discovery of such peril, and the burden of proof shall devolve upon such railroad to establish the fact, that this duty to keep such lookout has been performed." Acts 1911, page 275.

The plaintiff was a trespasser upon the tracks of defendant, but notwithstanding that fact, the defendant, according to the terms of the statute, was liable for the

injury if it was caused by the failure of the motorman to keep a lookout.

We decided in the recent case of *Central Railway Company of Arkansas* v. *Lindley*, 105 Ark. 294, that this statute applies to a motor car operated on a railroad for transportation of passengers.

The General Assembly of 1907 enacted a statute which provides that "any company, corporation or officer of court, owning or operating a railroad over fifty miles in length, in whole or in part within this State, shall be required to equip, maintain and use upon each and every locomotive being operated in road service in the State in the night time, a headlight of power and brilliancy of 1,500 candlepower," and it further provides a penalty by fine of not less than $300, nor more than $500, for each violation of the terms of the statute. Acts 1907, page 1018. The statute does not, in terms, declare any liability for damages on account of failure to comply therewith.

The court, over defendant's objections, gave the following instruction:

"5. The court instructs the jury that any company, corporation or officer of court, owning or operating a railroad over fifty miles in length, in whole or in part within this State, is, under the laws of this State, required to equip, maintain and use upon each and every locomotive being operated in road service in the State in the night time, a headlight of power and brilliancy of fifteen hundred candlepower. In this case, if you believe from the evidence that defendant company is operating within this State railway lines of more than fifty miles in length, and if you believe from the evidence that the train which struck the plaintiff was being operated with a headlight of less brilliancy than fifteen hundred candlepower, then the court tells you that in so operating its said train defendant was guilty of negligence, and should you so find, and should you believe from the evidence that but for such negligence, plaintiff's injury would not have happened, then you should find for the plaintiff."

It is contended on behalf of defendant that this instruction was erroneous because the statute does not declare any liability to injured trespassers on account of failure to comply with its terms.

We held in *St. Louis, Iron Mountain & Southern Railway Company* v. *White,* 93 Ark. 368, that a railroad company was liable to one of its servants for injury which resulted from a failure to properly equip a locomotive with headlight as required by statute.

Prior to the passage of the new lookout statute quoted above there was, of course, no liability on the part of a railroad company to trespassers or those guilty of contributory negligence except on account of negligence in failing to avoid an injury after discovering the perilous situation of the injured party. But the law as it now stands requires the train operatives to keep a lookout for trespassers, and all others, and makes the company liable for negligence in that regard notwithstanding the contributory negligence of the injured party. *St. Louis, I. M. & S. Ry. Co.* v. *Gibson,* 107 Ark. 431. The Legislature, in passing this statute, necessarily had in view all of the requirements of the law imposed for the protection of persons on the track and attempted to lay down a rule of conduct for those in charge of the train. This, of course, implied a duty to comply with all the requirements of the law exacted for the protection of persons on the track, and in order to make the new lookout statute effective, it must include the duty to equip the locomotive with a headlight of sufficient power and brilliancy to enable the engineer or motorman to keep a proper lookout. It can not be the state of the law that the trainmen are required to keep a lookout, and yet the company not bound to provide means for making the lookout efficient. The purpose of the statute in requiring a headlight of high candlepower is to enable the engineer and fireman to discover objects on the track, and when the Legislature subsequently declared the duty of those operatives to maintain a lookout, and fixed liability on the part of the company for their

failure to do so, this necessarily carried with it the statutory duty of the company to equip the locomotive with proper headlight and to make the company liable for damages caused by a failure to do so.

It is not insisted that the headlight statute does not apply to a motor car used for the transportation of passengers; but as the question suggests itself we deem it appropriate to say that, in our opinion, the statute does apply. The word "locomotive" is a comprehensive one, and, as used in this statute, applies to all self-propelling engines or machines used on railroads for the ordinary purpose of transporting freight or passengers. The car which inflicted the injury on the plaintiff was one used in the transportation of passengers, and was propelled by a gasoline engine. We think it falls within the definition of the word locomotive as used in the statute, and that defendant company is liable for any injury resulting from improper or insufficient headlight equipment.

The court did not err, therefore, in giving the instruction quoted above concerning the failure to properly equip the car with a headlight.

There are other assignments of error with respect to rulings of the court in giving and refusing instructions, but none of sufficient moment to call for discussion.

The case was properly tried and the evidence was sufficient to sustain the verdict.

Affirmed.